**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEDINA YOUNG, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 24-4619-JMY |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |
| and JAMES FRAZIER *individually,* | : | |
| Defendant. | : | |

**MEMORANDUM**

**Younge, J.**                                                                **July 16, 2026**

## I.       INTRODUCTION

Plaintiff Sedina Young ("Plaintiff") brings this unlawful termination suit against her former employer Southeastern Pennsylvania Transportation Authority ("SEPTA") and James Frazier ("Mr. Frazier"), (collectively referred to as "Defendants"). This case arises out of allegations of sexual harassment, hostile work environment, gender discrimination, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 *et seq* ("PHRA"). Now before the Court is Defendants' motion for summary judgment, (ECF No. 16), as well as responses in opposition and support. (ECF Nos. 17, 18.) The Court takes judicial notice of Plaintiff's withdrawal of Counts I, III, IV, and VI of her Complaint. (ECF No. 17, p. 3.) For the reasons set forth in this Memorandum, Defendants' Motion is GRANTED. [1] [2]

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

[2] The Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).

II.    **FACTUAL BACKGROUND**

Plaintiff complains that she was retaliated against by her employer SEPTA when she brought to their attention claims of sexual harassment, a hostile work environment, and sexual discrimination, that resulted in her unlawful termination. The Court summarizes the facts below.

**Plaintiff's Employment**

On July 11, 2022, Plaintiff was hired by SEPTA as a Bus Operator. (ECF No. 16-24.) SEPTA is a regional transit system providing transport services to Philadelphia and surrounding counties. (*Id*.) Plaintiff, along with new employees, was required to complete bus operator training, including completion of her Commercial Driver's License ("CDL"). (*Id*.) She reported to and was trained by Instructor Samantha Richardson ("Instructor Richardson"), who reported to Mr. Frazier, Chief Instructor at Callowhill. (*Id*.) Instructor Richardson was authorized to recommend termination of employees in the training program and advise on employee hiring decisions. (*Id*.)

As a trainee, Plaintiff spent her first few weeks of employment preparing for her CDL test. Her performance during the road sessions on July 16 and July 18, 2022, was reportedly an "inconsistent performance." (*Id*.) However, her performance began to improve in the following days, which were characterized as "semi-consistent performance." (*Id*.) On July 21, 2022, Plaintiff successfully completed her testing and earned her CDL. (*Id*.) Thereafter, Plaintiff spent the next 36 to 40 days primarily on the road learning bus routes, passenger pickups, safety procedures, writing incident and accident reports, and other related assignments. (*Id*.) In August 2022, Plaintiff's vehicle training and passenger pickups earned her recognition for "consistent performance" and "excellent performance." (*Id*.) Shortly thereafter, she successfully completed the bus operator training program, passing her final exam on September 2, 2022. (*Id*.) Plaintiff was then re-assigned to the Callowhill District under the supervision of the Director of Transportation at Callowhill, Ryan Lock ("Director Lock"). (*Id*.)

**Mr. Frazier's Employment Contact with Plaintiff**

Mr. Frazier was employed by SEPTA as Chief of Transportation. Defendants allege that Mr. Frazier did not provide any classroom instruction to Plaintiff, any bus training, or have any communication with

her. (*Id*.) Plaintiff, however, alleges that Mr. Frazier did instruct the training class on one instance, where a trainee arrived late, about the importance of being prompt, and he personally conducted Plaintiff's CDL testing. (ECF No. 17-9.)

**Plaintiff's Alleged Poor Conduct During Training**

Plaintiff satisfactorily completed her training requirements; however, Defendants' records indicate multiple disciplinary incidents regarding her conduct. (ECF No. 16-24.) Instructor Richardson reported that Plaintiff failed to comply with the training program's phone policy, failed to properly check in with her dispatcher, and failed to adhere to the no smoke policy (including hookah and vape) on a SEPTA vehicle. (*Id*.) Instructor Richardson reported that Plaintiff exhibited "combative behavior" by using profanity to falsely accuse peers of stealing her purse and routinely arguing with a trainee who refused to let her cheat off her test—conduct Plaintiff admits was inappropriate. (*Id*.) Defendants further allege that but for Instructor Richardson cutting Plaintiff a "break," she would have been dropped from the training program if she documented each conduct violation. (*Id*.) Instructor Richardson apparently cut breaks for other trainees so her decision not to document these infractions was consistent with the goal of training, which is to hire and not fire for minor disciplinary infractions. (*Id*.)

**SEPTA's Workplace Policies Signed by Plaintiff**

Upon joining SEPTA Plaintiff signed several employee policies acknowledging that SEPTA is an equal employment opportunity employer who strictly prohibits sex discrimination or harassment and sexual harassment and retaliation. Plaintiff also acknowledged that she is required to report incidents of harassment promptly. (*Id*.) Similarly, SEPTA is required to investigate such reports promptly and take effective remedial action. Plaintiff further acknowledged that as a bus driver she was required to report accidents by contacting the Control Center with her "bus number, route number, depot number, then standby for [] instructions . . . [then] report the incident at her assigned depot." (*Id*. at ¶ 37.)

**Plaintiff's Accidents as A Bus Driver**

Working out of SEPTA's Callowhill District, Plaintiff is alleged to have been involved in several vehicle accidents within two weeks of September 2022. (*Id*.) According to SEPTA's policies, supervisors

have the authority to indicate whether an incident is chargeable[3], preventable[4], or unpreventable[5]. (*Id*.) Plaintiff received a preventable mark on September 10, 2022, for making a wrong turn and hitting the bus's side mirror against a tree. (*Id*.) Plaintiff received a chargeable mark on September 20, 2022, for hitting a parked car, which resulted in a written warning. (*Id*.) On September 23, 2022, Plaintiff hit a parked sedan's sideview mirror. (*Id*.)

**Plaintiff's Alleged Failure to Report September 23, 2022 Accident**

Defendants allege that failure to report an accident is a dischargeable offense; however, reporting one is not an admission of fault. (*Id*.) Defendants further allege that Plaintiff hit a parked sedan's sideview mirror around 7:30pm at 58th and Callowhill Street but failed to report the accident to the Control Center or file a report after her shift. (*Id*.) SEPTA only learned of the accident on September 25 after receiving a complaint from the owner of the parked sedan, at which point an investigation report was prepared. (*Id*.) The investigation report—substantiated by video footage—revealed that although the owner of the parked sedan confronted Plaintiff about hitting her mirror, Plaintiff denied it and drove off. (*Id*.)

Once the accident investigation concluded, Plaintiff received notice that potential disciplinary action was imminent. (*Id*.) Plaintiff, however, contends that she submitted an accident report at the end of her shift at the Callowhill District depot. (*Id*.) Yet no report has been produced nor any evidence to refute Defendants' claim. (*Id*.)

**Exhaustion of Administrative Remedies**

On October 27, 2022, Plaintiff was informed that her employment with SEPTA had been terminated. (*Id*.) Prior to this decision, Plaintiff participated in an informal hearing where she was presented with the findings of the accident investigation report and the recommendation for her to be discharged from SEPTA employment. (*Id*.) On October 21, 2022, Plaintiff participated in a formal hearing with her three union representatives to express her grievances. (*Id*.) However, the hearing officer concluded that Plaintiff

---

[3] A chargeable incident is one in which the operator is completely at fault for the accident or incident.
[4] A preventable incident is where an operator is partially at fault.
[5] If an incident is unpreventable, then the operator is not at fault.

"failed to properly report the accident although she was well aware of reporting responsibilities after just recently completing training and submitting (4) reports prior to this accident. [Plaintiff] intentionally concealed the facts of this accident and therefore the proposed resolution of discharge is warranted." (*Id.*, Ex. S.) Plaintiff then appealed this decision at a labor step hearing. (*Id.*) There, the hearing officer independently determined that just cause existed to discharge Plaintiff. (*Id.*)

**Plaintiff's Allegations of Harassment and Discrimination**

Defendants allege that at no point during Plaintiff's employment nor her multiple hearings with independent review boards did she report any claims of harassment or discrimination. (ECF No. 16.) However, Plaintiff now alleges that Mr. Frazier, at various times after the training period, sexually harassed and discriminated against her, and as a result SEPTA retaliated by unlawfully terminating her employment. (ECF No. 17.) Plaintiff contends that Mr. Frazier would isolate her from others, at first, to discuss her accident history, then he proceeded to: ask Plaintiff if she was attracted or interested in him; offer Plaintiff money and alluded to meeting up with a woman on the second floor; suggest that Plaintiff should meet with him in the "quiet room" on the second floor; tell Plaintiff she owed him because she would have failed the CDL test but for him passing her; tell Plaintiff to stop talking to other male drivers which he called them "jokers"; and tell Plaintiff he wanted to know "how your lips taste on my penis." (*Id.*) Plaintiff also alleges that Mr. Frazier told her that if she were to complain it would not "go any further". (*Id.*) Plaintiff contends that she was a "bigger target at SEPTA" because she was not romantically interested in women nor a part of the "LGBTQ community." (*Id.*) Plaintiff also alleged that she spoke to one of her colleagues about being harassed but never reported it to SEPTA, a supervisor, or made a record of it. (*Id.*)

**Defendants' Termination of Similarly Situated Employee**

Defendants allege that prior to Plaintiff's firing, a male bus driver employee failed to report an accident. (ECF No. 16.) SEPTA, following the same investigative procedure as Plaintiff, recommended this employee be terminated from employment. (*Id.*) Thereafter, the employee was terminated for failure to report an accident. (*Id.*)

**Procedural History**

Procedurally, Plaintiff filed her Complaint against Defendants on August 30, 2024. (ECF No. 1.) On November 25, 2024, the Clerk of Court entered default against Defendants on the docket (ECF No. 6); however, Defendants filed their Answer to the Complaint that same day. (ECF No. 7.) After the Discovery period concluded, Defendants filed the present motion for summary judgment. (ECF No. 16.) Plaintiff then filed its' response in opposition withdrawing Counts I, III, IV, and VI of her Complaint. (ECF No. 17.) With the factual background established, the Court now turns to the parties' arguments.

III.    **LEGAL STANDARD**

Summary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017); Fed. R. Civ. P. 56(a). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). "A fact is material if it might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. To demonstrate that no material facts are in dispute, the movant must show that the nonmovant "has failed to establish one or more essential elements of his or her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, rather to determine whether "a reasonable jury could return a verdict for the nonmoving party." *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). For a nonmovant to prevail, they must show "specific facts such that a reasonable jury could find in their favor, thereby establishing a genuine issue of fact for trial." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535 (3d Cir. 2006). "While the evidence that the non-moving party

presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh*,418 F.3d at 267 (quoting *Anderson*, 477 U.S. at 251).

**IV.     DISCUSSION**

Plaintiff asserts three counts of sexual harassment against Defendants pursuant to Title VII and the PHRA alleging a hostile work environment, *quid pro quo* harassment, and aiding and abetting discriminatory practice. The Court will analyze Plaintiff's claims[6] under Title VII and the PHRA together as the same legal standard applies. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) ("Claims brought under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq., are generally 'interpreted coextensively with Title VII claims.'") (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 n.1 (3d Cir. 2009)). Accordingly, Title VII protects employees from discrimination based on sex.

### A.  Sexual Harassment under Title VII: Hostile Work Environment & Quid Pro Quo Claims

To state a claim for sexual harassment under Title VII, a plaintiff must allege that the harassment either constituted a quid pro quo exchange or was severe and pervasive enough to create an intimidating, hostile, or offensive work environment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986). Here, Plaintiff alleges both and so the Court will address each in turn.

### Hostile Work Environment

Plaintiff seeks to establish a hostile work environment claim by showing that Mr. Frazier's alleged comments were so sexual in nature that it was hostile and offensive. To make a claim of a hostile work environment, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his or her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) [with regard to a claim brought against an employer] the existence of respondeat superior liability." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)) (citation omitted).

---

[6] The Court takes judicial notice of Plaintiff's withdrawal of Counts I, III, IV, and VI of her Complaint. (ECF No. 17, p. 3.)

### i.      Prong One

Viewed in a light most favorable to her, Plaintiff's allegations about Mr. Frazier's sexually harassing comments made towards her support the contention that they were made because of her sex. At the summary judgment stage, the Court is required to ascertain "whether a reasonable factfinder could view the evidence as showing that [the plaintiff's] treatment was attributable to her [sex]." *Abramson v. William Paterson College*, 260 F.3d 265, 277 (3d Cir.2001). The Third Circuit has instructed that "all that is required is a showing that [sex] is a substantial factor in the harassment, and that if the plaintiff had been [a male] she would not have been treated in the same manner." *Aman v. Cot Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996). Accordingly, with all inferences drawn in Plaintiff's favor, the Court finds that Plaintiff has satisfied the first prong.

### ii.      Prong Two

When analyzing the severity and pervasiveness of the alleged conduct, the Third Circuit has instructed to "concentrate not on individual incidents, but on the overall scenario." *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005). To do so, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To satisfy the second prong, Plaintiff must show that her work environment was so permeated with discriminatory conduct that it objectively altered and created an abusive working environment. *Greer v. Mondelez Global, Inc.*, 590 Fed.Appx. 170, 173-74 (3d Cir. 2014) (citations omitted).

First, the Court considers the frequency of the alleged discriminatory conduct. *Harris*, 510 U.S. at 23. Plaintiff's allegations of her interactions with Mr. Frazier were limited, which included approximately two encounters during her training period and following her reporting of the September 10 accident. Plaintiff alleges that Mr. Frazier: asked Plaintiff if she was attracted or interested in him; offered Plaintiff money and alluded to meeting up with a woman on the second floor; suggested that Plaintiff should meet with him in the "quiet room" on the second floor; told Plaintiff she owed him because she would have failed

the CDL test but for him passing her; told Plaintiff to stop talking to other male drivers which he referred to them as "jokers"; and told Plaintiff he wanted to know "how your lips taste on my penis." The record established that Plaintiff's interactions with Mr. Frazier were limited to no more than seven brief encounters, with several of the alleged comments overlapping in time. The Court concludes that the alleged comments here lack the frequency necessary to establish pervasiveness.

Second, in considering the severity of the discriminatory conduct, the Court looks to whether the conduct "alter[s] the conditions of [the employee's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (citation and internal quotation marks omitted); *Harris*, 510 U.S. at 23. While the alleged comment regarding Mr. Frazier's genitalia was certainly reprehensible and unprofessional, the Court cannot find for Plaintiff that such a comment, the worst among the others alleged, rises to the level of severity that would alter working conditions. *See Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 25, 30 (3d Cir. 2010) (affirming a grant of summary judgment to the employer on hostile work environment claim, where the supervisor "regularly made comments about the size of his genitalia."). Plaintiff cannot also rely on "vague statements" that Mr. Frazier alluded to meeting up in the "quiet room" on the second floor where he met with others to establish severity or pervasiveness. *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). Moreover, Plaintiff has not provided any evidence of these comments creating an abusive working environment for her nor shown any steps she took to address the alleged harassment. Our Supreme Court has instructed that the severe and pervasive standard is an objective one, where a reasonable person would believe it to be hostile or abusive. *See Id*. at 21. Even viewing the allegations in the light most favorable to Plaintiff, the Court is restrained to conclude that Plaintiff has failed to establish facts to support her contention that Mr. Frazier's alleged sexually harassing comments were severe and pervasive.

Third, the Court must consider whether the alleged discrimination was physically threatening, humiliating, or unreasonably interfered with the plaintiff's work performance. *Harris*, 510 U.S. at 23. Plaintiff, however, provided no evidence that would allow this Court to find the existence of a hostile work environment.  Furthermore, Plaintiff does not dispute that her alleged encounters with Mr. Frazier during

her time with SEPTA were limited.  Unfortunately, "'[i]solated incidents and offhanded comments ... are not sufficient to sustain a hostile work environment claim,' 'even if they engender offensive feelings in an employee.'" *Sheehan v. Everstory Partners*, 804 F. Supp. 3d 498, 512 (E.D. Pa. 2025) (citations omitted). Undoubtedly, the bar for demonstrating a genuine issue of material fact as to severity is high. However, courts in this district have dismissed discrimination claims involving behavior far more egregious than what Plaintiff alleges here. *See, e.g.*, *Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439–40 (E.D. Pa. 2001) (concluding that the plaintiff "failed to demonstrate sufficiently severe or pervasive discrimination" where the record showed that the harasser touched the plaintiff's breast and propositioned her to join him later that evening; made several suggestive comments regarding her eyes and offered her financial assistance if she would go out with him; removed a bottle of wine from his pants, offered her a drink, and asked her to join him at a local hotel later for a "good time"; and patted her on her butt and breast).

Therefore, Plaintiff's allegations fail to show an objectively abusive environment that was severe and pervasive.

### iii.    Prong Three

The third prong requires the Court to determine whether Plaintiff has shown that the discrimination detrimentally affected her. Here, the parties do not dispute that Plaintiff subjectively believed that the alleged discrimination detrimentally affected her. Therefore, Plaintiff satisfied the third prong.

### iv.    Prong Four

With respect to the fourth prong, the Court must determine whether the discrimination would detrimentally affect a reasonable person of the same sex in that position. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Because Plaintiff has not shown that Mr. Frazier's alleged sexually harassing comments were sufficiently severe or pervasive, the Court is restrained to conclude that the fourth prong has not been met.

v.      **Prong Five**

Considering the fifth prong, Plaintiff must demonstrate "the existence of respondeat superior liability." A plaintiff can establish employer liability when the alleged sexually harassing hostile work environment was created by the plaintiff's supervisor. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Our Supreme Court has explained that an employee qualifies as a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 429 (2013) (internal quotations omitted). When no tangible employment action is taken, the employer may avail itself of the *Faragher-Ellerth* affirmative defense to liability or damages by showing: "that (1) the employer exercised reasonable care to prevent and correct any [sexually] harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id*. at 424 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775 (1998)). If tangible employment action has been taken, then strict liability attaches, and the affirmative defense is precluded.

It is clear from the record that SEPTA authorized Mr. Frazier, along with Instructor Richardson, with decision-making authority. Although Mr. Frazier alone did not have the authority to hire, fire, or promote Plaintiff, he could make recommendations with SEPTA that carried significant weight. SEPTA therefore "effectively delegated the power to take tangible employment actions" to Mr. Frazier during her training period as Chief of Transportation. *Vance*, 570 U.S. at 447; *see also Isenhour v. Outsourcing of Millersburg, Inc.,* No. 1:14–CV–1170, 2015 WL 6447512, at *8, 2015 U.S. Dist. LEXIS 144578, at *26–27 (M.D.Pa. Oct. 26, 2015) (finding that the harasser was a supervisor because she had the authority to supervise and discipline the plaintiff). Accordingly, the Court finds that, in the light most favorable to Plaintiff, Mr. Frazier is considered a supervisor while Plaintiff was in training.

The Court now must determine whether a tangible employment action was taken. If a tangible employment action occurred, then Defendants may not avail themselves of the *Faragher-Ellerth* affirmative defense. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807–08. This "defense depends on the reasonableness of [SEPTA's and Plaintiff's] preventative and remedial measures." *Cardenas v. Massey*, 269 F.3d 251, 266 (3d Cir.2001). Our Supreme Court in *Ellerth* even explained that an employer can establish this defense by showing that it "promulgated an antiharassment policy with complaint procedure" and the employee "failed to fulfill the corresponding obligation of reasonable care to avoid harm." 524 U.S. at 765.  Here, Plaintiff fails to show how a tangible employment action was taken against her when SEPTA, let alone anyone else associated with them, was aware of the alleged sexual harassment. In fact, Plaintiff did not inform SEPTA of such allegations or sought recourse for Mr. Frazier's alleged conduct until she filed her Complaint. Because SEPTA had a sexual harassment policy, in which Plaintiff agreed to adhere to, and she failed to avail herself of the obligation to report such allegations, the Court concludes that a tangible employment action has not been taken in this matter. Accordingly, the Court needs not address whether the *Faragher-Ellerth* defense applies because Plaintiff has not shown that Mr. Frazier's alleged sexually harassing comments were sufficiently severe or pervasive. Therefore, the fifth prong weighs in favor of dismissal.

Although the Court is required to view all facts in a light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor, Defendants have established that Plaintiff's hostile work environment claim fails as a matter of law. Accordingly, the Court will grant Defendant's summary judgment motion for Plaintiff's hostile work environment claim.

## Quid Pro Quo

Plaintiff also seeks to establish her sexual harassment claim under a *quid pro quo* theory by showing that her job security depended on acquiescing to Mr. Frazier's sexual demands. In considering a *quid pro quo* claim, the Third Circuit has held that

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute [quid pro quo] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's

employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual[.]

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir. 1997) (citations omitted). Our Supreme Court in *Ellerth*, however, restricted such a claim to a showing of "an actual change in employment conditions in cases where a plaintiff refused to submit to advances." *Moore v. Pennsylvania Dep't of Mil. & Veterans Affs.*, 216 F. Supp. 2d 446, 449 (E.D. Pa. 2002) (citing *Ellerth*, 524 U.S. 742). Thereafter, the Third Circuit instructed such claims are proven when "a plaintiff [] demonstrate[s] either that she submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual advances." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 133 (3d Cir. 1999).

The Court will now turn to whether Plaintiff submitted to the alleged sexual advances of Mr. Frazier. Plaintiff alleges that Mr. Frazier made sexually harassing comments to her, i.e. "meet him in the quiet room" and "how your lips taste on my penis," but nowhere in the record does she allege that she submitted to his alleged request. Moreover, Plaintiff's alleged rejection of Mr. Frazier's sexual advances did not result in a tangible employment action as the Court has already concluded no such action was taken. Plaintiff's *quid pro quo* claim is untenable as the employment decisions in question, i.e. not passing her CDL test, not approving her completion of training, or protecting her from accident reports, predated the alleged harassing conduct. It therefore follows that because Plaintiff did not show that she submitted to Mr. Frazier's alleged sexual advances nor could prove the existence of a tangible employment action, this *quid pro quo* sexual harassment claim fails as a matter of law.

In sum, because the undisputed facts demonstrate that Plaintiff's allegations did not establish a Title VII sexual harassment claim under either theory of a hostile work environment or *quid pro quo* and because Defendants are entitled to judgment as a matter of law, the Court will grant Defendant's summary judgment motion for this claim.

### B.  Aiding & Abetting under PHRA

Plaintiff also alleges that Mr. Frazier is personally responsible for aiding and abetting SEPTA's discriminatory practices pursuant to the PHRA. Section 955(e) of the PHRA imposes personal liability on

any employee who aids, abets, incites or coerces discriminatory practices. "[T]he Third Circuit has distinguished between coworkers, who cannot be held liable under section 955(e), and supervisors, who can be held liable under that section." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 705 (E.D. Pa. 2010) (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552–53 (3d Cir.1996)). This is because "supervisory employees can share the discriminatory intent and purpose of the employer." *Id*. However, "a non-supervisory employee's direct acts of discrimination do not trigger § 955(e) because the employee 'cannot be said to 'intend' that his employer fail[ed] to respond.'" *Frye v. Robinson Alarm Co.*, No. CIV. A. 97-0603, 1998 WL 57519, at *4 (E.D. Pa. Feb. 11, 1998) (citing *Dici*, 91 F.3d at 553).

Here, it is undisputed that Mr. Frazier supervised Plaintiff's direct supervisor, Instructor Richardson. It is also undisputed that once Plaintiff completed her training her supervision was transferred to the Callowhill District under Director Lock. It therefore follows that Mr. Frazier is considered a non-supervisory employee during the alleged discriminatory period upon which Plaintiff contends took place after her training. The Court also finds that because Director Lock—not Mr. Frazier-- made the decision to terminate Plaintiff for failure to report the September 23 accident, Mr. Frazier cannot be held liable for aiding and abetting SEPTA's practices.

There has been no evidence presented that Director Lock consulted with Mr. Frazier about Plaintiff's accident record, or her employment with SEPTA generally. Further, the record lacks any indication that Mr. Frazier spoke with Director Lock about the decision to terminate Plaintiff nor was he involved in the termination process, including the successive appeals. Because this evidence does not suggest that Mr. Frazier and Director Lock acted in concert, the Court is restrained to conclude that Mr. Frazier could not have shared the alleged discriminatory intent or purpose of SEPTA. Moreover, "[i]f the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice." *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013). Here, because SEPTA is not liable for discriminatory practice, Mr. Frazier cannot be liable for aiding and abetting Plaintiff's discrimination in violation of the PHRA. *Id*. Even viewing this evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine dispute of material

fact to indicate that Mr. Frazier was aiding and abetting a discriminatory practice of SEPTA. Accordingly, Plaintiff's aiding and abetting claim fails as a matter of law, and the Court grants Defendants' summary judgment motion.

**V.      CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED in its entirety. An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

    /s/ *John Milton Younge*
**JOHN MILTON YOUNGE, J**